## HUNKER v. ESTES et al.

(Court of Civil Appeals of Texas. Amarillo. May 10, 1913. On Motion for Rehearing, May 31, 1913. On Further Motion for Rehearing, July 5, 1913.)

1. APPEAL AND ERROR (§ 614*)—STATEMENT OF FACTS—AUTHENTICATION.

The statute provides that when a statement of facts has been agreed to by the parties and approved by the judge, the duplicate shall be filed with the clerk of the lower court, and the original sent up as a part of the record on appeal; hence, where there were what purported to be two statements of facts, one marked "original," but having only the certificate of the court stenographer, with no agreement of the parties, and no approval of the judge indorsed thereon, and the other not marked either "duplicate" or "original," with no certificate of the clerk that it was one or the other, neither will be considered by the court.

[Ed. Note.—For other cases, see Appeal and Error, Cent.Dig. §§ 2789, 2790; Dec.Dig. § 614 *]

### On Motion for Rehearing.

2. VENDOR AND PURCHASER (§ 281*) — BONA FIDE PURCHASER—FACTS PUTTING ON INQUIRY.

Evidence, in a suit to foreclose a vendor's lien on property in the hands of a purchaser from the vendee, *held* to sustain a finding that there were sufficient facts known to the purchaser at the time of the purchase which, if pursued with reasonable diligence, would have given him notice that the note sued on had not been paid, and that the vendor's lien by which it was secured had not been extinguished, and that the deed of release on record, purporting to release them, was a mistake.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 792–794; Dec. Dig. § 281.*]

3. VENDOR AND PURCHASER (§ 267*) — VENDOR'S LIEN—RELEASE.

The land described in a deed was section 82, block 12, certificate 2/251, H. & G. N. Ry. Co. school land, and the recited consideration was $3,700; $1,500 cash, one note for $1,000, and one for $1,200, and a vendor's lien was retained in both the deed and notes. A deed of release by the vendor recited that he released section 82, block 12, certificate 2/251, H. & G. N. Ry. Co. school land, from the lien of a note for $2,400. *Held*, that the deed of release did not release the lien of the $1,200 note described in the deed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 751–758; Dec. Dig. § 267.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

4. LIENS (§ 1*)—DEFINITION.

A lien is a legal claim or hold on property, either real or personal, as security for the payment of some debt or obligation.

[Ed. Note.—For other cases, see Liens, Cent. Dig. §§ 1, 4, 23; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 5, pp. 4184–4153; vol. 8. p. 7707.]

On Further Motion for Rehearing.

5. VENDOR AND PURCHASER (§ 280*)—ACTION FOR PURCHASE MONEY—COMPLAINT.

In a suit to collect a vendor's lien note, and to foreclose the vendor's lien on the property in the hands of a purchaser from the vendee, it was not necessary for the vendor to allege that the purchaser had notice of the lien, or that he was not a purchaser in good faith.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 784–789, 791; Dec. Dig. § 280.*]

Appeal from District Court, Collingsworth County; D. E. Decker, Judge.

Suit by J. T. Estes and others against J. Hunker. From a judgment in favor of plaintiffs, defendant appeals. Affirmed. Affirmed on rehearing.

Clinton C. Small and J. L. Lackey, both of Wellington, for appellant. R. H. Templeton, of Wellington, and S. A. Horton, of Oklahoma City, Okl., for appellees.

HUFF, C. J. [1] We are unable to consider the statement of facts filed in this case. There is what purports to be two statement of facts—one is not a copy of the other. Both were filed in this court February 17, 1913, and both indorsed filed by the clerk of the district court of Collingsworth county, January 4, 1913. One is marked "original," but this one has only the certificate of the court stenographer, and no agreement indorsed upon it, signed by the parties to the case, and no approval by the judge trying the same. Part of this statement is in question and answer form, and some three or four loose leaves pinned in the record. The other statement is not marked—either duplicate or original—and has no certificate from the clerk of the court that it is either the one or the other. The index calls for certain instruments which are not in the statement of facts. The attorney for appellee cites us in his brief to the pages of the statement of facts for certain instruments not found in the statement, and which the index calls for. The law provides that when a statement of facts is "agreed to by the parties and approved by the judge," the duplicate shall be filed with the clerk, and the original sent up as a part of the record in the cause on appeal. It will be seen from the above statement nearly every provision of the law has been violated in one or the other of the statements on file. We cannot determine from the record before us that either is a true and correct statement of facts adduced upon the trial. The affirmative evidence, as appears from the face of the statements themselves, is that neither presents the case upon which the trial court passed. It may be said in passing, both parties in this case present the same as if the deed from Estes to White had been duly recorded, and that Hunker had notice thereof. The record fails to show such recording of the deed. It would be useless for us to try to dispose of the case with any degree of justice to either party in the condition in which we find the record. This court has held that a duplicate statement of facts must be filed with the clerk of the court where the case was tried, and the original sent to this court. As seen, no original is sent to this court, agreed to by the parties, and approved by the judge. Witherspoon v. Crawford, 153 S. W. 633. There is an instrument here which does not appear to be either a duplicate or an original. Whatever it is, the index and the absence of a page from it shows it is not what it purports to be—a true and correct statement of the facts and evidence before the trial court. We cannot permit such total disregard of the statute as well as the rules. The brief of the respective parties evidently cites from a different statement to the one on file in this court. To permit such practice and overlook such a flagrant disregard to the law and rules would render the practice in this court too uncertain, and would open the door wide for the mutilation of the records of this court. Personally, the writer believes no statement should ever leave the clerk's office of the trial court without his certificate, under his seal, that it is the original, and that the duplicate of the same is on file and kept by him in his office. The statement of facts is a part of the record, and should be safeguarded with all the care that other portions of the record are required to be kept. Heflin v. Railway Co. (Sup.) 155 S. W. 188. There is no such statement of facts in this case as we feel warranted in considering, and there is no finding of fact and conclusions of law filed by the trial court, and from an inspection of the transcript, no such error is apparent, requiring a reversal.

The case will therefore be affirmed.

On Motion for Rehearing.

At a former day of this term of court we disposed of this case by affirming it, on the ground that the statement of facts was in such condition that we did not feel that we should consider it. The appellant now brings up the statement filed with the clerk in the court below, and requests that we permit it to be filed and the case considered upon that statement. The appellee joins in this request, and we will therefore consider the case upon such statements so brought up, and the clerk of this court will be ordered to file the same in this court as part of the record in this case. The deed which we mentioned as being pinned to the stenographer's report filed in this case has, since the preparation of our former opinion, been detached therefrom by some one and pinned into the statement, signed and agreed to by the at-

torneys, and approved by the district judge. We are unable to ascertain how or why it was done, or who did it. The act manifests a reckless disregard of the records of this court. It does not become material, except that it places this court in the light of having misstated the record in its former opinion. The disregard of the law in this particular in this case we believe would justify us in disregarding the statement of facts first filed, or the one brought up by agreement. We cannot too severely condemn such conduct, and refrain from warning that such must not occur again. It should be stated that the three deeds left out of the agreed statement first sent up to this court properly appear in the one filed with the district clerk and brought up in the motion for rehearing.

### On the Merits of the Case.

The appellee J. T. Estes institutes this suit against Melvin H. White and J. Hunker, on a vendor's lien note for the sum of $1,200, with interest and attorney's fees, dated May 11, 1909, due January 1, 1912, executed by Melvin H. White, and payable to J. T. Estes, as a part of the purchase money for section 82, block 12, certificate 2/251, H. & G. N. Ry. Co. school land. Judgment was rendered for the plaintiff for the amount of the note, interest, and attorney's fees, against Melvin H. White, and a foreclosure of the vendor's lien on the land as to both Hunker and White. J. Hunker has appealed from the judgment. Appellant, J. Hunker pleaded general denial, and that he was the legal and equitable owner of the land for value and without notice of the vendor's lien, and specially that appellee had executed a release of the vendor's lien on the land which was placed of record, and that appellee is estopped from setting the same up against appellant and the land. On May 11, 1909, J. T. Estes sold to Melvin H. White the section of land in question, for the recited consideration of $3,700; $1,500 cash, one note for $1,000, due January 1, 1910, and one note for $1,200, due January 1, 1912, each bearing interest at the rate of 8 per cent. per annum, and at said time White executed the two notes, payable to appellee Estes. The $1,200 note is the basis of this suit. The vendor's lien was retained in both the deed from Estes to White and in the note sued on, payable by White to Estes on section 82, block 12, certificate 2/251, H. &. G. N. Ry. Co. survey in Collingsworth county, Texas.

On the 5th day of March, 1910, Estes executed the following instrument: "State of Texas, County of Goliad. Whereas by deed of date May 11, A. D., 1909, duly recorded in the office of the county clerk of Collingsworth county, Tex., in Book ——, page —— thereof, J. T. Estes conveyed to Melvin H. White certain real estate and premises in the county of Collingsworth and state of Texas, being secs. Nos. 82 and 100, in block 12, certificate Nos. 2/251 and 2/260, H. & G. N. school land, all of which is fully described in said deed and to which reference is here made for a more particular description, retaining therein a vendor's lien securing the payment of $4,400.00 (forty-four and no one hundred dollars) for which Melvin H. White executed two promissory notes, as follows: First note for $2,000.00 (two thousand and no/100 dollars) and second for $2,400.00 (twenty-four hundred and no/100 dollars); and whereas, said Melvin H. White has made payment on said indebtedness and it is the desire of the undersigned to release all of sec. No. 82 from the above vendor's lien: Now therefore, I, J. T. Estes, of Goliad and state of Texas, being the legal and equitable owner and holder of said above-described notes, for and in consideration of the payment which I deem sufficient, do hereby release the said sec. No. 82 from the above-described land and declare the same extinguished, in so far as such section is concerned but no further, and that this release is in no manner to affect the lien now existing on the other property above mentioned."

This release was filed for record July 22, 1910. Appellant also introduced in evidence: A deed which purported to be dated July 23, 1910, from Melvin H. White to J. Hunker, to section 82, block 12, the land in question for the recited consideration of $9,000 cash. His deed was filed for record August 15, 1910. A release dated December 19, 1911, from Estes, reciting vendor's lien on section 100, certificate 2/260, H. & G. N. school land, retained in deed from Estes to White, dated May 11, 1909, to secure two notes, one for $2,000 and one for $2,400, due January 1, 1910, and January 1, 1912, respectively, acknowledging the payment of the $2,400 note, and that such payment was considered sufficient payment. The lien was released on section 100 for both notes. This release was filed for record January 5, 1912. Appellant introduced the deed from J. T. Estes and wife to Melvin H. White, dated May 11, 1909, conveying section 84, block 12, certificate 2/252, H. & G. N. Ry. Co. survey, sec. 100, block 12, certificate 2/260, H. & G. N. Ry. Co., for the recited consideration of $8,000— $3,600 cash and two notes—one for $2,000, due January 1, 1910; the other note is not set out in the copy in the statement of facts, but clearly from the release above set out is the note for $2,400. The vendor's lien is retained on said two sections of land to secure the payment of said two notes. Appellant introduced the note for $2,400, dated May 11, 1909, due January 1, 1912, which recites it is a vendor's lien on sections 84 and 100, block 12, and has indorsed on its face, "Paid December 29, 1911." Appellant introduced a deed dated July 11, 1910, from Melvin H. White and wife to Joseph St. Mary, conveying section 84 in block 12, certificate 2/252, H. & G. N. Ry. Co. survey. The consideration recited therein is $1. The appel-

lee introduced a deed from White and wife to O. F. Tissen, dated the 24th day of July, 1909, conveying section 82, block 12, and as part of the consideration Tissen assumed the payment of the two notes—one for $1,000, and the other for $1,200. A vendor's lien was retained to pay said two notes. This deed was filed for record July 30, 1909; also deed from O. T. Tissen to Jos. St. Mary, dated September 1, 1909, conveying section 82, block 12, and as part of the consideration the assumption of the two notes for $1,000, and $1,200, each due respectively January 1, 1910, and January 1, 1912, and to secure their payment a vendor's lien was retained in the deed. This deed was filed for record September 23, 1909; also deed from Joseph St. Mary and wife to Melvin H. White, dated the 12th day of July, 1910, conveying section 82, block 12, for the recited consideration of $1 and the exchange of other property. This deed was filed for record the 22d day of July, 1910. It is admitted by the parties that J. T. Estes made but one deed to section 82, block 12, certificate No. 2/251, which is the deed in the record, and that deed was made to Melvin H. White. The evidence shows in this case that Hunker paid White $9,000 cash for the land, and that he turned the abstract and release over to his attorney in Oklahoma to examine, who pronounced the title good with the exception of the description in the amount of the note and the discrepancy in the deed referred to as to the other land conveyed. The attorney and Hunker called on White to explain the discrepancy, and White's explanation was "that at the time of this transaction with Estes there were several transactions, and that at the time he made this particular release, they did not have the notes before them, and they had misdescribed the amount, and that was the reason the amount did not tally." It appears from the evidence that Estes, by two separate deeds, made to White on May 11, 1909, one conveying section 82, block 12, reserving a lien therein for the note sued on, and in the other deed sections 84 and 100 in block 12 were conveyed, reserving in the deed the vendor's lien to secure two notes—one for $2,000 and the other for $2,400. Estes lived in Goliad county during all the transactions. We think from the facts in the record that the trial court was warranted in finding that White conveyed section 82 through mistake down to St. Mary, when he intended to convey, section 84. The release was secured by White to clear section 84, and he prepared the same, or had it done, and sent it to Estes at Goliad, to execute. By mistake section 82 was placed therein instead of section 84. This was the condition of the title when appellant purchased the land, and his attorney prepared correction deeds. White for $1 conveyed to St. Mary section 84, and St. Mary conveyed to White section 82 for the consid-

eration of $1 and the exchange of property. These exchange deeds were made to correct the mistake, and had to be so made in order for White to transfer the land to Hunker. The release had not been placed of record until after the trade was made, but was simply held by White and given to Hunker or his attorney to examine with the abstract. It was recorded only one day before the deed to appellant is dated. The correction deeds were made between White and St. Mary some ten days before White conveyed to Hunker, and we prepared by Hunker's attorney to correct the error. The trade must have been in course of consummation 10 or 15 days before the deed was actually made and delivered to Hunker.

[2] We think the court had sufficient evidence before him to warrant the finding that there were sufficient facts known to Hunker at the time of the purchase which, if pursued with reasonable diligence, would have given him notice that the $1,200 not had not been paid, and the lien to secure the same extinguished on section 82, and that the naming of section 82 in the release deed was a mistake, and that the parties really intended to release section 84.

[3] We do not think the release on its face releases the lien retained in the deed from Estes to White, and in the note sued on, or that it discharged the lien for the $1,200. It does not purport to do so. The release recites that the two vendor's lien notes—one for $2,000 and the other for $2,400—were a lien retained on sections 82 and 100 to secure their payment, and that Estes was the legal and equitable owner of said notes, and in consideration of the payment, "which I deem sufficient," release section 82 from "the above-described lien," and declares same extinguished in so far as section 82 is concerned, but no further. The note sued on is not mentioned, and the release does not recite, nor is it inferable that the lien securing that note is extinguished.

[4] A lien is "a hold or claim which one person has upon the property of another as a surety for some debt or charge" (2 Bouvier); or, as defined elsewhere, "a lien is a legal claim or hold on property either real or personal, as security for the payment of some debt or obligation" (25 Cyc. 660; Ellis v. Cleburne, 35 S. W. 497). Our courts frequently say that the lien is but an incident of the debt, and the payment of the debt extinguishes the lien, and a release is ordinarily only evidence of that fact. The evidence furnished in this case by the release indicates only the release of a lien to secure a $2,400 note, and no other. Sometimes a release in form indicates an assignment of the grantor's interest, and when that is the evident intention, a release should be so treated. The form used will not so much control as the relation of the parties at the time and the intention of the parties. Brown v. Lapham,.

3 Cush. (Mass.) 554; Wadsworth v. Williams, 100 Mass. 131. Our Supreme Court, in the case of Sanborn v. Crowdus, 100 Tex. 605, 102 S. W. 719, said: "Notwithstanding the technical rule of common law as to deeds of release, we do not question that the words such as are used in the release in question, that the person executing it does 'release and forever quitclaim the said land and premises' would be sufficient in an ordinary deed purporting to be a conveyance to pass the grantor's title, although the grantee had no previous interest or possession. Effect must be given to the intention expressed in such instruments as in others, but an intention to convey land which had not been before sold and conveyed could not be gathered from a reading of this release. Such a meaning would never be imputed to it by any one looking alone to its terms. * * * Nowhere does an intention appear to make a new grant of anything. * * * But by its recital it connects itself with the former conveyance recited, and the two are thus made the complement of each other. * * * The two are to be construed together." Waldermeyer v. Loebig, 222 Mo. 540, 121 S. W. 75. The release in this case recites: "J. T. Estes conveyed to Melvin H. White certain real estate and premises in Collingsworth county, state of Texas, being sections Nos. 82 and 100, block 12, certificate 2/251 and 2/260, H. & G. N. school land, all of which is fully described in said deed to which reference is here made for a particular description, retaining therein a vendor's lien securing payment of $4,400.00 (forty-four hundred and no/100 dollars) for which White executed two notes—one for $2,000.00 and the other for $2,400.00." If appellant had examined the deed from Estes to White, conveying section 82, he would have at once ascertained that section 100 was not conveyed by that deed. He would also at once have ascertained that there was no lien retained in that deed to secure a $2,400 note, but there was a lien to secure $1,200. It would at once have suggested to him a mistake, and especially must that have been true when the abstract furnished him showed the title to 82 was in St. Mary, and that before a title could be conveyed by White, he would have to get a correction deed from St. Mary to White of 82, and his attorney then employed did prepare that deed, together with a deed from White to St. Mary, conveying section 84. Any sort of diligence on his part would have revealed the fact that sections 84 and 100 were conveyed together, and the vendor's lien retained thereon to secure the $2,400 note mentioned in the release. White told the lawyer they had several transactions, but no other investigation is made as to what these transactions were. Appellant rested contended with the statement "that they did not have the notes before them and misde-

scribed the amount." The release referred to a deed that did not exist. There was no recital therein that the note for $1,200 was paid and the lien released. The deed under which Hunker now holds, and all others, recited this $1,200 note as a lien against the land. We think the evidence amply sufficient to sustain the court's finding that the lien securing the $1,200 note was not released, and that appellant had notice of that fact, or should have known it, by any sort of diligence, from the facts stated in his chain of title, and from other statements made by White at the time.

For the reasons above stated, we grant a rehearing, and upon a consideration of the case upon its merits we find no such error as requires a reversal of the case, but we believe the trial court correctly disposed of the issues, and the cause is therefore affirmed.

## On Further Motion for Rehearing.

[5] Appellant, in his motion, asserts that this court overlooked the fact that appellee did not plead that appellant purchased the land with notice of the existence of the lien sought to be foreclosed. We do not think it was necessary for appellee to state by pleading notice, or that appellant was not a purchaser in good faith. Appellant himself put that in issue. He alleged "that he paid therefor the sum of $9,000, without any notice, either actual or constructive, of any claims of plaintiff to or concerning this land, and without any knowledge or information whatsoever of the claim asserted here by plaintiff." That issue was therefore presented by appellant himself. The release does not purport to release the land from the vendor's lien for $1,200 sued on. The deed under which appellant claims reserved a lien for the purchase money evidenced by the $1,200 note. The release introduced by appellant referred to a deed conveying two sections, 82 and 100. The deeds in appellant's chain of title convey only one section. Appellant himself offered in evidence the deed to sections 84 and 100, showing note for $2,400, and the release in question only released the land from the lien retained to secure that note. If appellant examined the title to his own section of land, he was bound to know, or at least have been placed in possession of facts which would have led to the knowledge, that the release did not refer to the deed in which the vendor's lien was retained.

The motion will be therefore overruled.