**BENTON et al. v. JONES et al. (No. 1628.)**

(Court of Civil Appeals of Texas. Amarillo. March 17, 1920.)

**1. Trial ⊜356(1)—Court cannot make finding on an unanswered submitted issue.**

Court, having submitted an issue to the jury, cannot make a finding thereon; the jury having failed to answer the same.

**2. Judgment ⊜256(2)—Court improperly rendered judgment under answers to issues submitted.**

Where the jury in answer to issues submitted found that defendant in action under vendor's lien note did not "have any notice from any source" that payee in note was not owner at time of releasing all claims against the land, and that defendant could "by the exercise of reasonable diligence have ascertained" that such payee did not own the note, the court could not render judgment for the defendant, because the jury must have meant in the first issue only that the defendant did not have actual knowledge.

**3. Mortgages ⊜154(2)—Mortgagee not innocent purchaser as to vendor's lien note which reasonable diligence would have disclosed.**

A subsequent mortgagee, or purchaser under such a mortgage, were not innocent purchasers as against an outstanding vendor's lien note, knowledge of which could have been acquired by using reasonable diligence.

**4. Judgment ⊜256(2)—Answer to inaccurate issue cannot be disregarded.**

When the court gives a charge, which is inaccurate but for the purpose of submitting an issue raised, and the jury answers the same, the answer cannot be disregarded because inaccurate.

**5. Mortgages ⊜372(2)—Instrument releasing lien not supported by consideration will not support plea of innocent purchaser.**

An instrument executed without consideration by a payee in vendor's lien notes releasing all claims in the land to a purchaser at a sale under a trust deed would not support a plea of innocent purchaser, as against a lien note which the payee had previously assigned to a third person.

**6. Mortgages ⊜159 — Instrument released vendor's lien on only one of two lots.**

An instrument reciting, "I further agree that said note for $2,000 shall be secured by the first lien on said lot 9 * * * and be a prior lien to the $600 note," held only a subordination of the vendor's lien on lot 9, leaving it a first lien on lot 10; such two lots being both covered by the vendor's lien and a trust deed securing the $2,000 note.

**7. Mortgages ⊜372(1)—Purchaser under trust deed acquires only rights given by deed.**

A purchaser at a sale of land under a trust deed acquires no more than the deed of trust gives him.

**8. Deeds ⊜121—Quitclaim held only a release of claim that sale under trust deed was invalid.**

An instrument in the form of quitclaim deed conveying all "the right, title, and interest in and to said property above referred to which I have or may have by virtue of being the owner and holder of any other notes and liens against said property, and do hereby declare same released from any and all claims," held simply a release of any claim that a sale under a trust deed was invalid.

**9. Contracts ⊜147(1)—Every part of instrument must be taken to ascertain intention.**

In construing an instrument, every part thereof must be taken to ascertain the intention of the parties to it, and the form used will not so much control as the relation of the parties at the time and their intention.

**10. Evidence ⊜461(1)—Parol evidence admissible to explain ambiguous instruments.**

If written instruments are ambiguous or uncertain, parol evidence is admissible to explain the real intention and purpose of the parties.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by Gertrude Benton and another against W. M. Jones and others. From an adverse judgment, the plaintiffs appeal. Reversed and remanded.

Clint, Chilton & Eades, of Dallas, for appellants.

Lively & Goggans, of Dallas, and W. M. Jones, of Farmersville, for appellees.

HUFF, C. J. Gertrude Benton, joined by her husband, H. P. Benton, sued W. R. Lamb and wife and others, together with W. M. Jones. The suit was to recover on a note secured by a vendor's lien on lot 10 in Oak Cliff Annex addition to Dallas, and to foreclose a lien thereon. Jones and other parties answered, setting up that he was the legal and equitable owner of the lot without

notice of the appellants' rights and also a purchaser for value without notice, etc. The pleadings are lengthy, but a recitation of a statement of the essential facts in this case will sufficiently present the issues, we think.

The trial court submitted the case upon special issues, some of which were not answered by the jury. The court rendered judgment in favor of the appellants against W. A. Benton for the face of the note, principal, interest, and attorney's fees, as a guarantor of the note, refusing a foreclosure on the lot, and also removed as a cloud upon Jones' title the vendor's lien claimed to exist as security of the note. The appellant Mrs. Benton and her husband appeal, making their appeal bond payable to all the other parties to the suit. W. A. Benton was the original payee in the note sued on. He sold and conveyed lot 10 to W. R. Lamb and wife by deed dated March 28, 1913, which was duly filed for record on February 27, 1914, and retained in said deed a vendor's lien to secure payment of the note in question, and said note also was secured by a deed of trust of even date therewith, duly recorded March 27, 1912. W. A. Benton, by a separate deed executed to the said W. R. Lamb and wife, conveyed lot 9 in said addition, in which deed the grantees assumed three notes, aggregating the sum of $2,000. They also executed to W. A. Benton certain notes secured by a second lien against lot 9. W. A. Benton indorsed the $600 note to his daughter-in-law, who lived in New Orleans, and for whom, it appears by Benton's testimony, he had been acting in loaning money for her and in buying property, and, according to his testimony, shortly after the execution of the note it was transferred to Gertrude Benton, the daughter-in-law, and the payment of which was guaranteed by W. A. Benton. However, there was no transfer of the lien at that time placed of record. Through mesne conveyances from Lamb and wife down to Rosie Moose and her husband, J. W. Moose, the title passed to them, and on December 21, 1914, Moose and wife conveyed lots 9 and 10 to D. L. Llewellyn, who assumed in the deed to him the payment of all of the said notes, including the one sued upon in this case. After Llewellyn became the purchaser of the lots, the then holder of the $2,000 notes and W. M. Jones, who was acting for one Brooks of North Carolina, entered into a subrogative agreement by which Brooks was subrogated to the rights of the lien to secure the $2,000. Llewellyn made an agreement with Jones and Brooks for a loan of $2,000 and executed therefor his note or bond, which was secured by a lien on lots 9 and 10, and by agreement of all parties at that time Brooks was to be subrogated to the rights of the then holder of the three notes aggregating $2,000. The record shows with reference to the deed of trust the following:

"Counsel for defendant Jones introduced in evidence deed of trust executed by Dwight L. Llewellyn to Robert C. Jones, trustee, dated August 17, 1915, filed for record July 31, 1916, recorded in Volume 295, p. 23, Deed of Trust Records, Dallas county, Tex., upon lots 9 and 10 in block 23, Oak Cliff Annex addition to the city of Dallas, Tex., said property being more fully described in two deeds executed on the 6th day of August, 1912, by the Interstate Suburban Realty Corporation to W. A. Benton, recorded in Volume 551, p. 453, and Volume 556, p. 487, respectively, to which reference is hereby made for better description of said land, and notes hereinafter mentioned, to secure one promissory bond, made by Dwight L. Llewellyn, payable to the order of R. P. Brooks, dated August 17, 1915, for $2,000, due and payable on September 1, 1918, with interest thereon from date until paid at the rate of 10 per cent. per annum, payable semiannually on the 1st day of March and September, according to six interest coupons thereto attached, with the usual provisions for attorney's fees. The bond hereinafter described is secured by a vendor's lien on the land described in first above described deed, and a second lien, second to $600 held by W. A. Benton on the land described in the last above described deed; said bond being in lieu of an extension of three notes executed by W. A. Benton on August 6, 1912, one in the sum of $1,000, and two in the sum of $500 each, due and payable in two, three, and four years after date respectively, payable to the order of Interstate Suburban Realty Corporation, and by it transferred to the Guaranty State Bank & Trust Company of Dallas, given for part of the purchase money of said lot 9 in block 23, as described in first above mentioned deed, recorded in Volume 551, p. 453, of Dallas county Deed Records. And it is expressly agreed that the holder of the bond hereinafter described shall be subrogated to all the rights and remedies for the collection of same that the holder of said original notes would have had the time of maturity thereof been extended by indorsement only and transferred to the payee of the bond hereinafter described."

On the same day W. A. Benton executed the following instrument:

"State of Texas, County of Dallas.

"Whereas, on the 6th day of August, 1912, the Interstate Suburban Realty Corporation did by its certain warranty deed, duly recorded in Volume 551, p. 453, of Deed Records of Dallas county, Tex., convey to W. A. Benton, of Dallas county, Tex., lot No. 9 in block 23 of Oak Cliff Annex, according to the plat of the same duly recorded in Volume 1, p. 216, of Map Records of Dallas county, Tex., and did, in said deed, retain a vendor's lien to secure the payment of three certain notes executed by me, and payable to said corporation, one in the sum of $1,000, due in two years after date, and two in the sum of $500 each, due in three and four years after date respectively, which said notes and liens securing same were by said corporation duly transferred to the Guar-

anty State Bank & Trust Company, by transfer duly recorded in volume 608, p. 263, of the Deed Records of Dallas county, Tex.; and

"Whereas, on the 28th day of March, 1913, W. A. Benton did by a certain warranty deed of that date convey the above-described property to William R. Lamb and wife Elizabeth M. G. Lamb, and did in said deed retain a vendor's lien therein to secure payment of the above-described three notes, assumed by said Lamb and wife, and also to secure payment of two notes executed by the said Lamb and wife, each in the sum of $500, dated of even date with said deed and due and payable to W. A. Benton or order in three and four years after date respectively, and also twenty-four notes of like tenor and effect, twenty-three in the sum of $30 each, and one in the sum of $10, all executed by Lamb and wife, due and payable to W. A. Benton or order monthly thereafter, each and all of said notes duly described in said deed, which is recorded in Volume 610, p. 35, of Deed Records of Dallas county, Tex., to which reference is hereby made; and

"Whereas, Dwight L. Llewellyn, of Dallas county, Tex., is now the owner of the above-described property, and has assumed payment of the first five of the above-described notes, aggregating the sum of $3,000, and desires an extension of time of the payment of the first three notes above described executed by me and now held by the Guaranty State Bank & Trust Company; and

"Whereas, R. P. Brooks, of Parsons county, N. C., is willing to purchase said notes and extend the maturity thereof to September 1, 1918, by taking a note in the sum of $2,000, dated of even date herewith, bearing interest at the rate of 10 per cent. per annum from date, signed by said Dwight L. Llewellyn and by W. A. Benton, as surety, said notes to remain a first lien against the above-described property:

"Therefore, know all men by these presents that I, W. A. Benton, of the county of Dallas and state of Texas, for and in consideration of the premises and the extension of maturity of said $2,000 indebtedness by said R. P. Brooks, as aforesaid, do hereby acknowledge the payment in full to me, while the owner and holder thereof, each and all of the twenty-four notes above described as twenty-three in the sum of $30 each and one in the sum of $10, and do hereby release, discharge, and quitclaim unto the said Dwight L. Llewellyn, his heirs and assigns, all the right, title, and interest in and to the property above described which I have or may have had by virtue of said twenty-four notes and liens, and do declare the same fully released from any and all liens created by virtue of said notes above mentioned. But it is distinctly understood and agreed that this release in no wise affects the lien securing the other five notes above described, aggregating the sum of $3,000. I further agree, however, that for and in consideration of the extension made by the said R. P. Brooks as aforesaid that the two notes above described executed by William R. Lamb and wife, Elizabeth M. G. Lamb, on the 28th day of March, 1913, hereinafter described, shall be and remain secured by a secondary lien subsequent to the lien securing the said $2,000 note given by said Llewellyn to said R. P. Brooks in lieu and in extension of the three notes first herein described as aforesaid. I further agree that said note of $2,000 shall be secured by first lien on said lot No. 9 in block 23 of Oak Cliff Annex as above described, and shall be a prior lien to the $600 note, and all other notes mentioned in a warranty deed from Mrs. Rosie Moose and husband, J. W. Moose, to Dwight L. Llewellyn, dated December 21, 1914.

"Witness my hand this 17th day of August, 1915.                    W. A. Benton."

There is a conflict of evidence as to whether Jones, who negotiated the above transactions, at that time knew that appellant Mrs. Benton was the owner and holder of the note sued on, or rather that W. A. Benton was not the owner of said note. Llewellyn afterwards defaulted in the payment of the note made to Brooks, and under the powers of sale in the deed of trust a substitute trustee was appointed, who sold lots 9 and 10 June 6, 1916, at which sale W. M. Jones became the purchaser thereof, bidding in the property for the sum of $2,400, and a deed was executed to him thereunder by the substitute trustee. It also appears there was some question as to the validity of the appointment of the substitute trustee before the sale thereunder was actually made, which was raised by Llewellyn. However, the exact ground of the objection to such sale is a disputed fact. It appears that on that day, June 6, 1916, Llewellyn and wife executed to W. M. Jones a deed conveying two lots, 9 and 10, for a recited consideration of $50. On October 31, 1916, W. A. Benton executed the following instrument:

"State of Texas, County of Dallas.

"Whereas, D. L. Llewellyn, of Dallas, Tex., did on the 17th day of August, 1916, by his duly executed deed of trust of said date, duly recorded in Volume 295, p. 23, of the Deed Records of Dallas county, Tex., transfer and convey to Robert D. Jones, trustee, certain property therein described in trust to secure the payment of one certain note in the sum of $2,000 of even date therewith, and due and payable to R. P. Brooks, or order, September 1, 1918; and

"Whereas, at said time I was the owner and holder of certain notes secured also by a lien on said property, which lien was secondary, subsequent to the lien securing the note given to the said R. P. Brooks as aforesaid, and for the purpose of procuring an extension of the time of payment of the said $2,000 by the said Brooks, I executed a written indorsement on said note; and

"Whereas, the said D. L. Llewellyn failed and refused to pay the first installment of interest due on said note of $2,000, and the same was matured according to the terms and conditions of said deed of trust, and foreclosure was made on said property, and sale thereof made by D. E. Coffman, the legal substitute trustee, to William Jones, who thereby became the legal and equitable owner and holder of said property; and

"Whereas, it is desired that my attitude to-

wards said proceeding be made a matter of record, and any and all doubt thereby removed:

"Therefore know all men by these presents that I, W. A. Benton, of Dallas, Tex., for and in consideration of the premises and of the sum of $36 to me in hand paid by William M. Jones, the receipt of which is hereby acknowledged, do hereby bargain, sell, and release and quitclaim unto the said William M. Jones all the right, title, and interest in and to said property above referred to which I have or may have had by virtue of being the owner and holder of any other notes and liens against said property, and do hereby declare the same released from any and all claims, legal or equitable, owned or held by me in any manner whatsoever.

"Witness my hand this 31st day of October, 1916.     W. A. Benton."

The following are the issues submitted and the answers of the jury:

"Q. No. 1. Was the plaintiff Gertrude Benton the owner of the $600 note sued on herein on and prior to August 17, 1915, and at the time of the institution of this suit?" The jury failed to answer this question.

"Q. No. 2. Did the defendant W. M. Jones have any notice from any source that the defendant W. A. Benton was not the owner of the $600 note in question on or prior to August 17, 1915, and before said defendant Jones consummated the loan of $2,000 to the defendant Llewellyn? Answer: No.

"Q. No. 3. Was the consideration as written in the quitclaim deed dated October 31, 1916, and made by W. A. Benton to the defendant Jones, changed or altered after the execution thereof and without the knowledge or consent of 'defendant W. A. Benton? Answer: Yes.

"Q. No. 4. Did the defendant W. A. Benton know or believe at the time he executed the quitclaim deed referred to in the preceding interrogatory No. 3 that the same included or in any way affected lot No. 10 in this suit, or the lien, if any thereon securing the $600 note sued on?" No answer by the jury.

"Q. No. 5. Did the defendant W. A. Benton know or believe at the time he executed a paper dated August 17, 1915, called extension agreement, or subrogation paper, that the same included or in any way affected lot No. 10 aforesaid, or the lien thereon securing the $600 note in question?" No answer by the jury.

"Q. No. 6. The jury answered issues Nos. 6 and 7 that there was no deceit or fraud in obtaining the execution of the two instruments dated August 17, 1915, and October 31, 1916, by W. A. Benton to W. M. Jones. * * *

"Q. No. 8. Could the defendant W. M. Jones, if he didn't already know, by the exercise of reasonable diligence, have ascertained at the time the $2,000 loan was made to the defendant Dwight L. Llewellyn that the defendant W. A. Benton didn't own the $600 note herein sued on? Answer: Yes.

"Q. No. 9. Could the defendant W. M. Jones, if he didn't already know, have ascertained by the exercise of reasonable diligence that the defendant W. A. Benton didn't own the $600 note sued on at the time he obtained the quitclaim deed from Benton dated October 31, 1916? Answer: Yes.

"Q. No. 10. Did the defendant W. M. Jones know at the time he obtained the deed from D. L. Llewellyn dated the 6th day of July, 1916, that the $600 note herein sued on was then outstanding against lot No. 10 involved in this suit? Answer: Yes.

"Q. No. 11. What was the consideration paid by defendant W. M. Jones to the defendant Llewellyn for the execution and delivery of the deed referred to in the preceding interrogatory No. 10? Answer: $50.

"Q. No. 12. Was there any consideration paid to the defendant W. A. Benton or any party at his request for his use or benefit for the execution of the instrument dated August 17, 1915, called extension agreement, etc.? Answer: No.

"Q. No. 13. Was there any consideration paid to the defendant W. A. Benton, or any party at his request for his use and benefit, for the execution of the quitclaim deed to W. M. Jones, dated October 31, 1916? Answer: No."

The trial court sustained appellee Jones' motion to render judgment for him and the motion of some of the other defendants for judgment in their favor, and the judgment so entered substantially was as heretofore indicated. The assignments presented assail the action of the court in refusing the appellants' motion for a judgment and in sustaining the appellees' motion to render judgment in favor of Jones and others.

[1-5] The first issue submitted was not answered by the jury. The question asked was whether the appellant owned the note sued on for $600 prior to August 17, 1915. In answer to issue No. 2 the jury found Jones had no notice from any source that W. A. Benton was not the owner, but to issue No. 8 the jury found that Jones could, by the exercise of reasonable diligence, have ascertained that W. A. Benton was not the owner of the $600 note at the time the loan was made to Llewellyn. It may be true that under the judgment rendered by the court and the undisputed facts, except perhaps by circumstances, issue 1 would be immaterial in determining the rights of the parties, but the record shows from the jury's report to the court, while they had the case under consideration, that they regarded issue 1 as important, and that agreement thereon was impossible. We are inclined to the view that the court, having submitted' issue 1, could not himself make a finding thereon' as if the jury had not been called upon to determine the fact. It may be that the answer to issue 8 was a practical finding that W. A. Benton did not own the note on or before August 17, 1915. The issues presented by the pleadings were: Did appellant own the note at that time? And did Jones have notice that W. A. Benton did not own it? If appellant owned the note, and Jones had notice thereof, the instrument executed by W. A. Benton would not affect her rights. The trial court either found she did not own it or that Jones had no notice. On the first

issue the court asked the finding of the jury, and could not, therefore, under the statute, make a finding on that issue. If he found that Jones had no notice, then he found contrary to the finding of the jury in answer to issue No. 8, thereby practically setting aside their verdict, which he could not do, and render judgment thereon. But it is insisted the jury found in answer to issue No. 2 Jones had no notice from any source that Benton was not the owner. It is probable, we think, that the jury confounded notice with knowledge, or rather the notice consisted of knowledge alone, and doubtless was led to do so by the form of the issue presented by the court, as will appear from issue 8, where they are asked could Jones "if he didn't already know," ascertain, etc. It was doubtless the understanding of the jury from these issues that the court required of them by issue No. 2 to find whether Jones knew the facts asked about, and by issue No. 8, if he did not know such to be true, could he, by exercising reasonable diligence, have ascertained that fact? It is probable that issue No. 8 is not strictly correct, but in considering the two issues the trial court may have had in mind the rule that notice may be actual knowledge of the facts, and also that notice consists of knowledge of facts exciting inquiry, which would lead to a knowledge of the facts by the exercise of ordinary or reasonable diligence. The facts, considered in connection with these issues, suggest that Benton informed the parties at the time of the execution of the instrument that the note was held by another party. If issue 8 is a finding by the jury in effect that reasonable diligence would have led to a knowledge of the fact that Mrs. Benton owned the note, then appellee Jones or his principal, Brooks, were not innocent purchasers, and would not be entitled to a preference over appellant in foreclosing her lien on lot 10. It is doubtless true in certain instances the trial court is not required to give a requested charge or issue which embodies an incorrect proposition of law; yet, when the court does give a charge which is inaccurate, but for the purpose of submitting an issue raised, and the jury answers the same, we think the answer cannot be disregarded because the issue is incorrectly submitted by the court. If our interpretation of the answers of the jury to the issues as submitted is not correct, then they are so uncertain as to be insufficient to support a judgment which might be rendered thereon. In effect, the findings in answer to issue No. 8 destroy issue No. 2. The same condition with reference to the issues and findings of the jury exists against the issues inquiring about the quitclaim deed made by W. A. Benton October 31, 1916. However, on this issue there was no requested finding as to whether Jones had notice before the execution of the deed as was submitted to the other instrument by issue No. 2. The jury also found as to the quitclaim deed that it had been altered. It is perhaps correct that the court on the question of alteration was justified in finding that the alteration was not material, and, if made, that it was by a stranger to the deed, and not by Jones or by his authority. But the jury found, in answer to issues 12 and 13 that both instruments, the one dated August 17, 1915, and the one dated October 31, 1916, signed by W. A. Benton, were without consideration paid to Benton, or any party at his request, for his use or benefit. If these instruments were without consideration, they would not support the plea of innocent purchaser by Jones, even though he had no notice of Mrs. Benton's ownership of the note. He would not be a bona fide purchaser within the meaning of the law. If the trial court found there was a consideration contrary to the finding of the jury, he virtually substituted his finding for that of the jury, which he could not do under the law authorizing a submission on special issues.

[6, 7] However, there is a more serious question apparent upon the face of the instruments themselves. The instrument of August 17, 1915, is claimed by Jones to have the effect of an agreement on the part of W. A. Benton to make the $600 note, which was a first vendor's lien on lot 10, a secondary lien on such lot to the $2,000 bond executed by Llewellyn to Brooks. We do not think such is the effect or meaning of the instrument on its face. After reciting the conveyance of lot 9 and the execution of the bond to Brooks for $2000, it is recited that said note was to remain a first lien on lot No. 9, which is repeated as to all notes. The following clause in that instrument, upon which Jones appears to rely as giving the $2,000 note preference over the $600 note on lot 10, is:

"I further agree that said note of $2,000 shall be secured by first lien on said lot No. 9 in block 23 of Oak Cliff Annex as above described, and shall be a prior lien to the $600 note all and other notes mentioned in a warranty deed from Mrs. Rosie Moose and husband, J. W. Moose, to Dwight L. Llewellyn, dated December 21, 1914."

The $2,000 note by the very terms of the above clause is confined to lot 9 as a first lien, and the $2,000 is prior to the $600 note on that lot and no other. The Moose deed to Llewellyn made the $600 note which was given for the purchase of lot 10 a lien on lot 9. It is evident, we think, the purpose was to leave no doubt that the $2,000 note was a first lien on lot 9, and that the $600 note was only a second lien thereon. This conclusion is, we think, strengthened when the deed of trust which Llewellyn executed to Jones on that day is taken into consideration. The deed of trust recited in effect that

the $2,000 note is a first lien on lot 9 and is a second lien to $600 held by W. A. Benton on lot 10. It is under the terms of this deed of trust that Jones purchased lots 9 and 10, and by his own title he shows the note for which the land was sold was a second lien on lot 10 to the $600 note. He got by his conveyance no more right than the deed of trust gave him, and he holds by that right. The deed of Llewellyn and wife for $50 consideration did not affect the rights of the holder of the $600 note.

[8-10] The quitclaim of October 31, 1916, is unique. It refers to the execution of the deed of trust above mentioned, the sale thereunder to Jones, and then recites:

"Whereas, it is the desire that my attitude towards said proceeding be made a matter of record, and any and all doubt thereby removed."

The deed of trust had not postponed the $600 note to a secondary place on lot 10; neither did the sale to Jones. W. A. Benton's attitude to such proceeding was desired; that is that he was not attacking the sale for irregularity, etc. But Jones wanted a quitclaim deed, and proceeded to recite a consideration therefor, which the jury found was not paid. It seems to us the real purpose of this deed was to get a release and quitclaim of all "the right, title, and interest in and to said property above referred to which I have or may have by virtue of being the owner and holder of any other notes and liens against said property, and do hereby declare same released from any and all claims, legal or equitable, owned or held by me." It is manifest this is simply a release. While it proposes to convey an interest, yet its evident meaning is to release liens held by the grantor. Every part of the instrument must be taken to ascertain the intention of parties to it. The form used will not so much control as the relation of the parties at the time and their intention. As said by Judge Williams in the case of Sanborn v. Crowdus, 100 Tex. 605, 102 S. W. 719:

"An intention to convey land which had not been before sold and conveyed could not be gathered from a reading of this release. Such a meaning would never be imputed to it by any one looking alone to its terms. * * * Nowhere does an intention appear to make a new grant of anything. * * * But by its recitals it connects itself with the former conveyance recited, and the two are thus made the complements of each other. * * * The two are to be construed together."

See, also, Hunker v. Estes, 159 S. W. 470; Waldermeyer v. Leebig, 222 Mo. 540, 121 S. W. 75. This quitclaim evidences the purpose to carry out the terms of the deed of trust, which only gave a first lien on lot 9, and the purchase was only of such right so conveyed by the deed of trust and that to gratify a desire to know Benton's attitude toward such sale. The release was executed, as may be inferred, recognizing a first lien on lot 9. But if these instruments, together with their various recitals, are ambiguous or uncertain, then parol testimony was admissible to explain the real intention and purpose of the parties. The trial court evidently upon the trial treated the instruments as ambiguous, and therefore submitted issues Nos. 4 and 5, which the jury failed to answer. No. 4 in effect requested a finding whether W. A. Benton believed in executing the quitclaim deed that the same included lot No. 10, or the lien thereon securing the $600 note. Perhaps the issue should not have confined the finding of the jury to Benton's intention alone. However, we think the appellant, under these instruments and the facts in this case, was entitled to an answer to this issue as well as issue No. 5. This instrument did not induce Jones to buy the land at trustee's sale. He could not claim to be an innocent purchaser by virtue thereof. He parted with nothing unless it was $36 or $21 paid an insurance company, which the jury found was not paid for Benton or any party at his request for his use or benefit. There is evidence which will support this finding of the jury. There was nothing, therefore, which placed Jones in the attitude of an innocent purchaser as against the owner of the $600 note. In fact, the instrument itself only purports to convey the interest of W. A. Benton. If he had no interest at that time, Jones got nothing, and cannot be held to be a bona fide purchaser, such as would defeat the owner of the note sued on.

We think the judgment should be reversed, and the cause remanded; and it is so ordered.