## LAKEWOOD HEIGHTS CO. v. McCUISTION et al. (No. 8400.)

(Court of Civil Appeals of Texas. Dallas. Dec. 18, 1920. Rehearing Denied Jan. 15, 1921.)

1. **Covenants ⬅61—Agreement to make improvements does not run with the land.**

An agreement between vendor and purchaser, collateral to the deed of conveyance, whereby the vendor agreed to furnish electricity, gas, water, sewers, and street car service, is not a covenant running with the land and does not inure to the benefit of the assigns of the first purchaser.

2. **Contracts ⬅186(3)—Subsequent purchaser held not entitled to sue on vendor's contract to improve.**

A subsequent purchaser of land cannot sue on a contract by the vendor to make improvements to the land which was not a covenant running with the land, where the subsequent purchaser failed to establish a promise by the vendor to him to perform that contract for his benefit.

3. **Trial ⬅356(6)—Court cannot find issues on which jury disagreed.**

Where the case was submitted to the jury on special issues, the court could not find issue so submitted as to which the jury disagreed, so that it could not be presumed on appeal, even in the absence of a statement of facts, that the court made findings on such issue supported by the evidence as were necessary to sustain the judgment.

4. **Damages ⬅120(3)—Measure for vendor's breach of contract to improve stated.**

In a suit by a subsequent purchaser for breach of vendor's promise to make for plaintiff certain improvements in connection with the property, which were promised to the original purchaser, the measure of damages was the difference between the amount paid by plaintiff for the lot and the value thereof without the promised improvements, not the difference between the actual value of the lot and the amount the vendor received from the original purchaser, which would be the measure of damages in an action for fraudulent representations.

Error from District Court, Dallas County; Marshall Thomas, Special Judge.

Suit by Susie McCuistion and another against the Lakewood Heights Company and another. Judgment for plaintiffs against the named defendant and the named defendant brings error. Reversed and remanded for new trial.

Etheridge, McCormick & Bromberg, of Dallas, for plaintiff in error.

Parks & Hall, of Dallas, for defendants in error.

TALBOT, J. C. E. McCuistion and his wife, Susie McCuistion, defendants in error, hereinafter designated as plaintiffs, sued the plaintiffs in error, hereinafter designated as defendant, and Dan Sonnentheil to recover damages in the sum of $4,500. Plaintiffs alleged, in substance, that on the 1st day of March, 1915, the defendant Lakewood Heights Company, a private corporation, acting by and through its president, Dan Sonnentheil, and its secretary, Louis C. Sonnentheil, conveyed to B. F. Germany lot No. 7 in block No. 8 in Lakewood Heights, an addition to the city of Dallas, Tex., for the consideration of $4,350 paid and to be paid; that thereafter, on, to-wit, the 20th day of March, 1915, the said Germany and his wife, for and in consideration of $4,800 paid and secured to be paid by the said C. E. McCuistion, acting on behalf of the plaintiffs, sold and conveyed to the said C. E. McCuistion said lot of land, together with all improvements thereon, which then became the homestead of plaintiffs and the separate property of the plaintiff Mrs. Susie McCuistion; that on February 2, 1915, and prior to the execution of the deed by the defendant to B. F. Germany, the defendant made and entered into a written contract with the said B. F. Germany whereby the defendant contracted to sell the lot of land in question to the said Germany for $850, and to supply him with funds with which to construct a two-story ten-room house thereon to cost not exceeding $4,250, and to furnish the said Germany sewerage, water, and electric lights by the time the house was completed, and, in the event a street car line should not be completed to Lakewood Heights at the time of the completion of the house, to furnish free transportation to the Belmont car line until street car service should be furnished at Lakewood, said street car service or free transportation to begin not later than May 1, 1915. This contract was set out in hæc verba in the petition. Plaintiffs further allege that before they purchased said property they went over the same and inspected the premises and the adjoining lots for sale in said Lakewood Heights addition, "and found large placards or signboards on which there were large letters reading, in substance, that the Lakewood Heights Company, defendant herein, guaranteed to purchasers of

lots sewerage, gas, water, macadamized streets, and street cars"; that defendants through their agents issued and put in circulation and delivered to plaintiffs large pamphlets and printed documents, and caused to be published in newspapers the marvelous story of Lakewood Heights addition development, in which they reiterated and repromised to the owner or any purchaser of any lot in said addition immediate gas, street car service or free transportation, a perfect sewer system, plenty of water, and macadamized streets; that the foregoing is the substance of the representations made by the defendants to the general public and especially to those desiring to purchase lots in Lakewood Heights addition. Plaintiffs further averred that the plaintiff C. E. McCuistion called upon the defendant Dan Sonnentheil, personally, before plaintiffs purchased the land involved in this suit from B. F. Germany and was shown the contract between the defendant and Germany and was promised and assured by the defendant through Sonnentheil, its agent, that defendant would render performance to plaintiffs of the said contract with Germany; that plaintiffs inquired of the said Sonnentheil, who was the agent of the defendant Lakewood Heights Company in making sales of lots in Lakewood Heights addition, as to the time within which said company would furnish said macadamized streets, sewerage, gas, water, and street railway in said addition for the use of the purchasers of lots in said addition, and when the same would be furnished with reference to the lot which had been sold to B. F. Germany, at the same time telling the said Sonnentheil that he (McCuistion) was negotiating with the said Germany for the purchase of said lot, and that the said Sonnentheil assured him (plaintiff) "that all of said conveniences would be furnished the said addition by the 1st day of May, 1915, and told plaintiff that he could absolutely rely upon it in making the purchase of said property," all of which representations and statements were false; that said statements, representations, and promises were made by the defendants for the purpose of inducing the plaintiffs to purchase from B. F. Germany the land and premises involved in this suit and to induce others to purchase other property in said Lakewood Heights addition owned by defendants; that plaintiffs, in purchasing the lot and premises in question from B. F. Germany, relied upon the statements, representations, promises, and assurances on the part of the defendants and believed they were made in good faith, and that their promises to furnish Lakewood Heights addition with street car service, sewerage, gas, water, and macadamized streets by May 1, 1915, would be fulfilled, otherwise they would not have bought from B. F. Germany. Plaintiffs alleged that the lot, with the improvements thereon, purchased by them from Germany, furnished with macadamized streets, sewerage, gas, water, and electric lights, would have been, on May 1, 1915, of the reasonable value of $6,000, and without said conveniences the reasonable value thereof on the 1st day of May, 1915, was not more than $2,500. The case was submitted to a jury upon special issues, and upon the findings made the court rendered judgment in favor of Sonnentheil and in favor of the plaintiffs against the defendant Lakewood Heights Company for $1,230, and said company perfected a writ of error to this court.

[1] The first question presented is whether or not the defendant's contract to furnish B. F. Germany sewerage, water, electric lights, and free transportation to the Belmont car line in the city of Dallas was a covenant running with the land. The plaintiffs assert that it was, and the defendant insists that it was not, and, standing alone, could not afford the plaintiffs, who were strangers to that contract, the basis of a cause of action against the defendant. We have reached the conclusion that under decisions of this state the appellant's views are correct. In Railway Co. v. Smith, 72 Tex. 122, 9 S. W. 865, 2 L. R. A. 281, Guy M. Bryan had granted, by deed, to the railway company the right of way across a tract of land owned by him. There was a stipulation in the deed to the effect that, under certain conditions, the railway company should keep its right of way fenced. Bryan sold the land and a remote vendor brought suit against the railway company for damages for breach of the covenant. The court held that the covenant did not run with the land and that the plaintiff showed no cause of action. The court said:

"There has been much discussion in the cases turning upon this point 'concerning express covenants and covenants in law, and which covenants run with the land and which of them are collateral and do not go with the land; and where the assignee shall be bound, without naming him, and where not.' In Spencer's Case, 3 Coke, 31, which is recognized as the leading authority upon this subject, the rule is said to be that when the covenant extends to a thing in esse, part of the demise, the thing to be done by force of the covenant, is annexed and appurtenant to the thing demised, and shall go with the land and bind the assignee though he be not bound by express words; but when the covenant extends to a thing which is not in being at the time of the demise made, it cannot be appurtenant or annexed to the thing which has no being. If the covenant be to erect or set up a new house and the like, it will not bind the assignees unless they be named in the covenant. * * * Those covenants which are held to run with the land and inure to the benefit of the assignee, are such as generally affected the land itself and conferred a benefit on the grantor."

Manifestly, the covenant in question was not designed to confer a benefit on the defendant, the grantor, and the plaintiffs did not allege an assignment to themselves by B. F. Germany of his interest in the contract. They merely alleged in this connection the purchase by them 'from Germany of the house and lot. ,There seems to be quite a contrariety of opinion on the part of the courts as to whether or not a covenant concerning a thing not in esse at the time of the demise runs with the land without the use of the word "assigns," and it is said that because of a recognized inconsistency between the "first and second resolutions" in Spencer's Case the courts have of late been trying to break away from the old rule that the use of the word "assigns" is necessary to give the covenant that effect. In the comparatively recent case of M. Sexauer v. John Wilson, 136 Iowa, 357, 113 N. W. 941, 14 L. R. A. (N. S.) 185, 15 Ann. Cas. 54, the Supreme Court of Iowa held that a covenant on the part of the grantee perpetually to maintain a tight fence between the land conveyed and other property of the grantor adjacent thereto runs with the land and therefore binding upon a subsequent grantee, although there was no fence in existence at the time the covenant was made, and the word "assigns" was not used in the covenant. The authorities, however, appear to be pretty evenly divided on the question, and while we are strongly inclined to the view that the later decisions which regard the intention of the parties as gathered from the whole instrument the controlling factor, rather than the use or omission of mere technical words, are correct, yet the case of Railway Company v. Smith settles the question in this state in favor of the rule announced in Spencer's Case and binding upon this court. Therefore, upon the authority of the case of Railway Co. v. Smith, cited above, we hold that the covenant contained in the contract made on February 2, 1915, between the defendant and B. F. Germany, was personal to Germany and not one running with the land.

Appellant's next proposition is that—

"Proof by the plaintiffs of their allegation that the defendant, prior to and at the time of their purchase of the lot from Germany, represented that it would perform its personal covenant with Germany, was essential to the plaintiffs' right of recovery and the disagreement of the jury upon that issue destroyed the plaintiffs' right of recovery."

The substance of the plaintiffs' allegations upon this branch of the case was that—

The defendant "assured them pending their negotiations for the purchase of the lot from B. F. Germany that it would make performance unto them of the contract it had made with Germany, and that they (plaintiffs) relied on such assurance and would not have purchased the lot from Germany but for such assurance."

These issues, at the instance of the plaintiffs, were submitted to the jury, and the covenant in the contract between defendant and Germany not being one running with the land, their affirmative establishment was essential to the plaintiffs' right of recovery. The first of these issues was submitted in the following language:

"Did the defendant Dan Sonnentheil represent to the plaintiff C. E. McCuistion, before C. E. McCuistion .purchased from B. F. Germany the lot an·l house in question that if he (McCuistion) did purchase from B. F. Germany that house and lot, the Lakewood Heights Company would in all things keep and perform the written contract between Lakewood Heights Company and B. F. Germany regarding the furnishing of sewerage, water, and lights by the time the house was completed, and free transportation to Belmont car line until street railway should be furnished to Lakewood, the free transportation not to begin later than May 1, 1915?"

The answer of the jury to this issue was:

"Can't agree on this point."

The jury was instructed that if an affirmative answer was given to the foregoing issue then to answer this question:

"Did C. E. McCuistion, in making the purchase of the house and lot from B. F. Germany, rely upon both the stipulations in the contract between B. F. Germany and Lakewood Heights Company and the statement and assurances by Dan Sonnentheil inquired about in question No. 9 and believe them to be true and that the representations would be performed?"

To this question the jury made no answer. The following issue was also submitted:

"Would C. E. McCuistion have purchased the lot and house in question if said representations made in said contract and by Dan Sonnentheil, if any, and inquired about in questions Nos. 9 and 10 last hereinbefore asked you, had not been made to him?"

The answer of the jury to this issue was:

"Can't agree on this question."

[2] Thus it appears that the foregoing issues, although submitted to the jury, and presumably upon evidence sufficient to justify findings upon them, were not determined, and the covenant in the contract declared on not being one running with the land, no basis is found in the record for the judgment rendered by the court in favor of the plaintiffs. Unquestionably, the general rule is that no person can sue upon a contract except he be a party to or in privity with it, and, because of the disagreement of the jury as indicated, the plaintiffs failed to bring themselves within any exception to that general rule. In other words, the jury having disagreed and failed to determine the only issue alleged showing a cause of action

against the defendant, the plaintiffs were not entitled to judgment.

[3] That no statement of facts is in the record is immaterial in passing upon the question; for, no matter what the testimony was upon the issue, the failure of the jury to agree and determine it left the court without a basis or predicate for the judgment sought, since the covenant in the contract between defendant and B. F. Germany was not one running with the land. The vital issues having been submitted to the jury, as indicated, for their determination, and the jury having failed to determine those issues, the presumption cannot obtain, as is suggested by the plaintiffs, that the facts necessary to sustain the judgment of the district court were found by that court. As said by counsel for defendant, when a cause is submitted on special issues, such issues must be determined by the jury. In such case the court is powerless to decide any issue so submitted. Differently stated, the court in a jury trial in which special issues are submitted to the jury can only decide such issues as have not been submitted and have not been requested to be submitted to the jury. Bargna v. Bargna, 127 S. W. 1156; Benton v. Jones, 220 S. W. 193; Carlitz v. Bank, 152 S. W. 1151; Cisco Oil Mill v. Van Green, 166 S. W. 439.

[4] The defendant contends, in effect, that the court did not submit correct issues relating to the measure of damages, and that the amount found by the jury, and for which judgment was rendered by the court, was unauthorized under the facts and law applicable thereto. The propositions asserted are: (1) That where the vendee is induced by false representations to enter into a contract to purchase a lot, the measure of his damages is the difference between the sum paid and the actual value of the lot; (2) that "the measure of damage was the difference between the actual value of the lot and what Germany paid the defendant for it, and not the difference between the reasonable cash market value of the house and lot with and without the conveniences of sewerage, water, electric lights, and free transportation to Belmont car line." In support of these propositions the cases of George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456, and Martin v. Goodman, 187 S. W. 689, are cited. The jury, in answer to questions propounded by the court, found that the difference between the $4,800 paid by the plaintiffs for the lot in question with the improvements situated thereon on the 1st day of May, 1915, if the lot and the house thereon had been furnished with sewerage, lights, water, and free transportation to Belmont car line, and the value of said house and lot without such conveniences on the 1st day of May, 1915, was $1,000; that the difference between the reasonable cash market value of the house and lot on said date, "if the same had been furnished at that time with sewerage, water and electric lights and free transportation to Belmont car line," and the value of said house and lot without said improvements on the 1st day of May, 1915, was $1,000. The jury further found, in answer to a special issue submitted, that the actual value of the lot, "exclusive of all improvements thereon, considering its condition as affected by the performance, or failure to perform, as the case may be, in whole or in part of said contract by the said Lakewood Heights Company," was $435. The nature of the present suit is not the same as that of George v. Hesse, supra, and upon which the decision of this court in Martin v. Goodman is predicated, and the measure of damages is not, in our opinion, the same. Hesse's Case, as pointed out by the Supreme Court, was one in which the plaintiff sued to recover damages for a fraudulent representation by which he was induced to enter into a contract to his loss, and not one in which the plaintiff sued for the breach of a contract; the contract in that case having been performed by both parties. The court held that in such a case the extent of the plaintiff's loss was the difference between the value of that which he had parted with and the value of that which he had received under the agreement. Here the plaintiffs sue, not to recover on account of a fraudulent representation of an existing fact, but for the breach of alleged contract to do the things mentioned in the future which they claim has not been performed. The effect of their allegations is that as an inducement to the purchase of the house and lot involved in this controversy, in which purchase plaintiffs were to assume the payment of certain notes held by the defendant against B. F. Germany, defendant promised and agreed to carry out its written contract with the said Germany in which it had covenanted and agreed with Germany to supply said premises with sewerage, water, electric lights, etc., for the benefit of the plaintiffs, with the emphatic assurance that such conveniences would be furnished by the 1st day of May, 1915. If such a contract was, in fact, made with the plaintiffs and such assurance given them by defendant as alleged by plaintiffs, then defendant is bound thereby and liable in damages for a breach thereof; the measure of such damages being, as we believe, that applied by the court in rendering the judgment from which this appeal is taken.

The plaintiffs are entitled to have a determination of the issue tendered by them of whether or not the defendant represented and agreed with plaintiffs before they purchased the house and lot from B. F. Germany that in the event of such purchase defendant would keep and perform the written contract

between the defendant and B. F. Germany regarding the furnishing of sewerage, water, electric lights, and free transportation to the Belmont car line until a street railway should be constructed to Lakewood Heights addition, and the case will not be reversed and judgment rendered in this court for defendant, as asked by it, but will be reversed and remanded for a trial on that issue.

Reversed and remanded.